**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RAUL AVILA,                        :        NO. 3:02CV00851 (RNC)
     Plaintiff,

v.                                 :

ESTATE OF ROBIN KROOGMAN,
JOSEPH WITKOWSKI and
MICHAEL KILLINGWORTH,
     Defendants.                   :        APRIL 20, 2005

<u>**JOINT TRIAL MEMORANDUM**</u>

    **I.**      **Trial Counsel**

        <u>**Plaintiff**</u>
        John R. Williams
        Rob Serafinowicz
        51 Elm Street
        New Haven, CT 06510
        203.562.9931
        Fax: 203.776.9494
        E-Mail: jrw@johnrwilliams.com

        <u>**Defendants**</u>
        Rodger W. Lehr, Jr.
        Deputy Corporation Counsel
        City of New Haven
        Office of the Corporation Counsel
        165 Church Street, 4th Floor
        New Haven, CT 06510
        Phone:  203-946-7964
        Fax:  203-946-7942
        Email Address: rlehr@newhavenct.net

    **II.**    **Jurisdiction**

       The basis for the court's subject matter jurisdiction is Sections 1331,

1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the

United States Code.

### III.     Jury-Nonjury

The plaintiff has elected trial by jury.

### IV.     Nature of the Case

The plaintiff claims that he was chilled in the exercise of his First Amendment right to freedom of speech, his Fourth Amendment rights to be free from unlawful seizure and unreasonable force, his Fourteenth Amendment rights to due process of law, and pendent state-law claims of assault and battery and intentional infliction of emotion distress.

### V.     Stipulations of Fact and Law

None.

### VI.     Plaintiff's Contentions

1.     The plaintiff was arrested and unlawfully seized by defendants Illingworth and Witkowski, New Haven police officers acting under color of law, although the plaintiff had committed no crime, and there was no probable cause to believe he had committed any crime.

2.     As a member of the City of New Haven's Board of Aldermen, the plaintiff had a right to be present at the May 9, 2002, Community Development Meeting, and he had a right to express his point of view on issues of public concern.

3.     The plaintiff spoke on issues of public concern at the May 9, 2002 Community Development Meeting.

4.      Alderwoman Kroogman was acting under color of law at all times relevant to this complaint, and she ordered the arrest of the plaintiff with actual malice and intent.  She ordered the arrest of the plaintiff as a means of chilling the plaintiff in the plaintiff's exercise of his First Amendment rights to freedom of speech and freedom of association.  Alderwoman Kroogman also sought to inflict severe emotional distress upon the plaintiff.

5.      The plaintiff was actually chilled in the exercise of his First Amendment rights and he suffered severe emotional distress.

6.      The actions of Alderwoman Kroogman and defendants Illingworth and Witkowski were extreme, outrageous and shocking to the conscience.

7.      Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendants, but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries herein complained of.

8.      No reasonable police officer could believe that it was lawful to arrest a public official during a public meeting the official was attending in his official capacity for expressing a point of view.


**VII.     Defendants' Contentions**

This case involves a verbal disagreement between plaintiff Avila and Alderwoman Kroogman that occurred on May 9, 2002 in the aldermanic chambers at New Haven's City Hall during a Community Development Committee public hearing.  Alderwoman Kroogman was the Chairperson of the

Committee and plaintiff Avila, although not a Committee member, was present in his capacity as a member of the New Haven Board of Aldermen.  Ms. Kroogman and Mr. Avila, along with other Committee members and aldermen, were seated at a table in the front of the room.  Interested members of the public were also present and were invited to make statements to the Committee to express their views on the issues at hand.

During the early part of the meeting, Mr. Avila asked a member of the public a question in Spanish and the answer was provided in Spanish.  Ms. Kroogman then requested that Mr. Avila translate the question and answer so that all present could understand it.  Mr. Avila refused.  A verbal argument then ensued between Ms. Kroogman and Mr. Avila regarding Mr. Avila's refusal to translate.

Ms. Kroogman then asked the two defendant uniformed police officers in the back of the room to remove Mr. Avila from the hearing.  In an attempt to get Mr. Avila's attention while he was still arguing with Ms. Kroogman at the front table, one of the police officers (Joseph Witkowski) touched Mr. Avila on the shoulder.  Ms. Kroogman then recessed the meeting and a short break was taken.  Ms. Kroogman and Mr. Avila left the room, worked out their differences and returned shortly thereafter at which time the hearing resumed and thereafter eventually concluded.  After the break a constituent of Ms. Kroogman's agreed to translate for the rest of the hearing.

Importantly, Mr. Avila was not arrested.  Mr. Avila was not seized.  Mr. Avila was not removed from the hearing.  There was no use of unreasonable

force.  At most, this case involves a *de minimis* unconsented-to touching.  There were no constitutional violations.  There was no assault and battery.  There was no intentional infliction of emotional distress.  What there was - - was a brief verbal argument over translating and a *de minimis* unconsented-to touching of Mr. Avila by Officer Witkowski - - hardly the stuff of a Federal lawsuit.

**VIII.   Legal Issues**

1.   Whether, on the facts of this case, it was unlawful to seize and remove a public official from a public meeting he had an official right to attend.

2.   Whether, on the facts of this case, the complaint states a claim upon which relief may be granted.

3.   Whether, on the facts of this case, Alderwoman Kroogman was entitled to absolute immunity under federal law.

4.   Whether, on the facts of this case, the defendants are entitled to qualified immunity under federal and state law.

**IX.   Voir Dire Questions**

1.   This is a lawsuit for alleged civil rights violations brought by a citizen against police officers and a public official.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.   The plaintiff was himself an elected official in the City of New Haven. Is there anything about that status that would present you with difficulty in evaluating the case?

3.   Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

4.      Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against police officers or other public officials?  If so, please explain.

5.      Have you or anyone close to you ever served as an elected official or been employed as a policeman or by any law enforcement agency in any capacity?  If so, please explain.

6.      Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

7.      Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

8.      Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

9.      Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.      Has anyone here or anyone close to you ever been employed by an attorney?

11.      Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.      Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13.      Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14.     Have you or anyone close to you ever been the victim of a crime?

15.     Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.     Have you or anyone close to you ever been arrested?

17.     Has anyone here ever witnessed an arrest?

18.     Have you, or has anyone close to you, ever been a party to a lawsuit?  If so, please explain.

19.     Where are you employed?

20.     If you are married, is your spouse connected in any way with any police?

**X.     List of Witnesses**

**Plaintiff**

1.     The plaintiff, Raul Avila, is expected to testify for 2.0 hours about the events of May 9, 2002, the disagreement between he and Alderwoman Kroogman about matters of public concern to residents of New Haven, and the impact of the defendants' actions upon him.

2.     Defendant Joseph Witkowski will be cross-examined for 2.0 hours about the events of May 9, 2002, his training in the areas of the law of arrest and the use of force, and his relationship with Alderwoman Kroogman prior to May 9, 2002.

3.     Defendant Michael Illingworth will be cross-examined for 2.0 hours about the events of May 9, 2002, his training in the areas of the law of arrest and the use of force, and his relationship with Alderwoman Kroogman prior to May 9, 2002.

4.     Alderman Juan Candelaria. 20 minutes. Will testify about his observations

of the May 9, 2002 meeting.

5.      Alderman Andrea Jackson-Brooks.   20 minutes. Will testify about his observations of the May 9, 2002 meeting.

6.      Alderman Mae Ola Riddick.  20 minutes. Will testify about her observations of the May 9, 2002 meeting.

7.      Alderman Edward Mattison. 20 minutes. Will testify about his observations of the May 9, 2002 meeting.

8.      Aldermen Jenkins. 20 minutes. Will testify about his observations of the May 9, 2002 meeting.

9.      Andrew Rizzo, Interim Executive Director of Livable City Initiative. 20 minutes. Will testify about his observations of the May 9, 2002 meeting.

10.      Pedro Curbelo, 19 Center Ave., New Haven, Connecticut. 20 minutes. Will testify about his observations of the May 9, 2002 meeting.

11.      Juan Como, 480 Ferry St., New Haven. 20 minutes. Will testify about his observations of the May 9, 2002 meeting.

### Defendants

1.      The plaintiff, Raul Avila, will be cross-examined for approximately1 hour.

2.      Andrew Rizzo.  20 minutes.  Will testify about his observations of the May 9, 2002 hearing.

3.      Nick Torneo.  20 Minutes.  Will testify about his observations of the May 9, 2002 hearing.

4.      Juan Candelaria.  20 minutes. Will testify about his observations of the May 9, 2002 hearing.

5.      Edward Mattison. 20 minutes. Will testify about his observations of the May 9, 2002 hearing.

6.      Andrea Jackson-Brooks. 20 minutes. Will testify about his observations of the May 9, 2002 hearing.

7.      Elizabeth McCormack. 20 minutes. Will testify about her observations of the May 9, 2002 hearing.

8.      Yusuf Shah. 20 minutes. Will testify about his observations of the May 9, 2002 hearing.

9.      Police Officer Michael Illingworth. 20 minutes. Will testify about his observations of the May 9, 2002 hearing.

10.     Police Officer Joseph Witkowski. 20 minutes. Will testify about his observations of the May 9, 2002 hearing.

11.     Shirley Dixon (audiotape transcriber).  10 minutes.  Will authenticate the transcript of the May 9, 2002 hearing.

## XL.     Exhibits

1.      Audiotapes of the May 9, 2002 Community Development Meeting (three tapes, providing a recording of what transpired at the meeting).  Three hours in length.

2.      Report of Defendant Witkowski dated May 23, 2002.

3.      Transcript of May 9, 2002 meeting audiotatpes.

5.      Minutes of May 9, 2002 meeting.

## XII.    Deposition Testimony

None anticipated.

**XIII.   Jury Instructions**

      See attached Plaintiff's and Defendants' Preliminary Proposed Jury

Instructions.

**XIV.   Anticipated Evidentiary Issues**

      None.

**XVI.   Trial Time**

      The parties estimate four (4) days of evidence.

**XVII.  Further Proceedings**

      Defendants request the court's permission to take the plaintiff's deposition


and file a motion for summary judgment.  Otherwise, the case is ready for trial.

**XVIII. Trial By Magistrate**

      The parties do not consent to trial by Magistrate.


      The undersigned counsel hereby certify that this Joint Trial Memorandum

is the product of consultation between the lawyers who will be trying the case.

PLAINTIFF                           DEFENDANTS



By_____          By/s/_____
  John R. Williams                         Rodger W. Lehr, Jr.

## PLAINTIFF'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

1.      The plaintiff has brought this lawsuit to obtain redress for what he contends were

violations of his rights under the United States Constitution, specifically his right to be

free from violation of his rights to freedom of speech, association and assembly under the

First Amendment and violation of his rights to freedom from unreasonable force and

false arrest under the Fourth Amendment. Federal law provides that any individual may

seek redress in this Court, by way of money damages, against any person or persons who,

under color of State law, deprive that individual of any of his constitutional rights.

"Acting under color of law" means "under pretense of law," and simply means acting in

one's capacity as, in this case, police officers and an elected official of the City of New

Haven.  In this case, the parties have stipulated that the defendants acted under color of

law, so you need not concern yourselves with that issue.  [Monroe v. Pape, 365 U.S. 167

(1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220

(4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]


2.      It is not necessary to find that any defendant had any specific intent to deprive the

plaintiff of his civil rights in order to find in favor of the plaintiff. The plaintiff is entitled

to relief if any defendant intended the actions which resulted in the violation of the

plaintiff's rights or if any defendant acted in reckless disregard of the plaintiff's rights.

Reckless disregard of the plaintiff's rights simply means not caring whether or not those

rights were being violated. [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989);

Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d

438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990)

(Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of

Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521,

528 (D. Conn. 1993) (Cabranes, J.).]

3.      If you find that a defendant is liable to the plaintiff on any of the grounds

advanced in this lawsuit, you should then consider the question of damages. There are

essentially two kinds of damages which can be awarded in a lawsuit -- compensatory

damages and punitive damages.  Compensatory damages are designed to compensate the

plaintiff for injuries suffered by the plaintiff.  These injuries include not only money

actually spent or debts incurred as a result of the injury, but also emotional anguish,

impairment of reputation, personal humiliation, and other suffering.  In fixing

compensatory damages you should determine the amount of money which will, in your

judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which

was proximately caused by the wrongful conduct of the defendant. [Memphis

Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637

F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981);

Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112

Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994);

Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27

Conn. App. 471, 476, 607 A.2d 443 (1992).]

4.      You may also decide whether the plaintiff is entitled to the award of any punitive

damages.  In a case like this one, you may consider whether acts or omissions of any defendant, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct.  Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things: 1) Willful or malicious violation of the constitutional rights of the plaintiff; 2)  Any intentional act by the defendant in gross disregard of the rights of the plaintiff; 3) Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff. If you find any one of these three things to have been proven, then you should award punitive damages.  [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

5.      The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community. In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case.  These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case.  [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir.

1978).]

6.      When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages.  All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

7.       The plaintiff alleges that the defendants intentionally inflicted emotional distress upon him in violation of Connecticut law.  Under Connecticut law, when a person engages in conduct which involves an unreasonable risk of causing emotional distress to another and that emotional distress is of a kind which, if caused, might adversely affect the plaintiff in a serious way, and the plaintiff actually has suffered such emotional injury, then the plaintiff is entitled to recover any damages which you determine are fair and just to compensate for the emotional distress she has suffered.  It is not necessary for

there to be any physical injury in order for the plaintiff to recover.  All that is necessary is

that the conduct of the defendant have been outrageous, that it have been undertaken

under such circumstances that a reasonable person would have known that it was likely to

cause emotional distress, and that severe emotional distress actually has resulted.  If you

find these facts to have been proven, then the defendant should be found liable to the

plaintiff for the intentional infliction of emotional distress under Connecticut state law.

[Buckam v. People Express, Inc., 205 Conn. 166, 173 (1987); Murray v. Bridgeport

Hospital, 40 Conn.Sup. 56 (Conn.Super. 1984); Buckley v. Lovallo, 2 Conn. App. 579

(1984); Petyan v. Ellis, 200 Conn. 243 (1986).]


8.      The plaintiff alleges that the defendants retaliated against him for exercising

his right to freedoms of speech, association and assembly under the First Amendment to

the Constitution of the United States. To prevail on a claim such as this, the plaintiff must

first establish what is called a prima facie case. To establish a prima facie case of

retaliation the plaintiff must show by a preponderance of the evidence (1) that he was

engaged in protected speech, association or assembly under the First Amendment, (2) that

the defendants were aware of the plaintiff's protected activity, (3) that the defendants took

retaliatory action against the plaintiff based on his protected activity and (4) a causal

connection between the plaintiff's protected activity and the retaliatory action.


9.      To establish the first element of his prima facie case the plaintiff must establish

that his acts of speech, association or assembly were protected by the Free Speech Clause

of the First Amendment.  This question is a question of law, and is not a question for you

to consider.  I instruct you that the plaintiff's activities in question in this case were activities protected by the First Amendment.  To satisfy the second element of his prima facie case the plaintiff must demonstrate that the defendants who took any of the retaliatory actions were aware of the plaintiff's exercise of protected activity. The third element of the plaintiff's prima facie case of retaliation is that the defendants took action against him in retaliation for his protected activity. As to the fourth element, causation, the plaintiff must establish that his exercise of protected rights was a substantial or motivating factor in the defendants' action.  That is, that the plaintiff's protected activity played a substantial or motivating part in the defendants' retaliatory action.  The plaintiff may establish causation in several ways.  One way is to show temporal proximity between the protected activity and the retaliatory action.  Another way is to show direct evidence of retaliatory animus. The defendant may have taken the alleged action for one sole reason. If that one sole reason was the plaintiff's protected activity, then you must find that the plaintiff's protected activity was a substantial or motivating factor in the defendants' actions.  The defendants may have taken action for many different reasons. If so, then you must determine whether one of those reasons was the plaintiff's exercise of protected rights.  If it was one of those reasons, then you must determine whether it was a substantial or motivating factor in the retaliatory action against the plaintiff.  If it did play a substantial or motivating part, then you must find that the plaintiff's protected activity was a substantial or motivating factor in the defendants' action.  If you find that the plaintiff established all four elements of the prima facie case then he has proven an inference of retaliation. You must then consider whether the defendants have demonstrated that a legitimate non-prohibited reason existed for their actions.

10.     The defendants present an adequate defense to the plaintiff's case if they show, by

a preponderance of the evidence, that they would have taken the same adverse actions

even in the absence of the plaintiff's protected activity. In other words, the defendants

must show by a preponderance of the evidence that the same action would have been

taken without considering the plaintiff's protected activity.  If the defendants show by a

preponderance of the evidence that the same action would have been taken without

considering the plaintiff's protected activity, then you must find in favor of the

defendants.  The defendants do not establish an adequate defense merely by showing that

they had other, valid reasons for taking action against the plaintiff.  It is a defense only if

the defendants establish that they would have acted on those other reasons in the absence

of the plaintiff's protected activity.  Therefore, if the defendants offer other, valid reasons

for taking action against the plaintiff, the defendants must further show that they would

have acted on those reasons.  Otherwise, the defendants have not presented an adequate

defense.  If you find that the defendants have demonstrated a legitimate,

nondiscriminatory reason or reasons for their action, then you must consider whether the

plaintiff has proven that the defendants' articulated reason or reasons were a mere pretext.


11.     The plaintiff must prove, through either direct or indirect evidence, that the

defendants' articulated reason was not the true reason for their actions but is only a

pretext or excuse for taking the alleged retaliatory action against the plaintiff and that the

defendants' action was prompted by the plaintiff's protected activity.  The plaintiff can

prove that the defendants' stated reason for their action is a pretext by persuading you that their reason or reasons are just not believable. However, it is not enough for the plaintiff simply to prove that the defendants' stated reason for their actions was not the true reason. Even if you decide that the defendants did not truly rely on the stated reason or reasons for their actions, you cannot decide in the plaintiff's favor without evidence that the defendants relied instead on the plaintiff's protected activity. In other words, the defendants may not be held liable if you find that they would have taken the same actions based on a legitimate reason alone. [**AUTHORITY**: Nevas, J., in Salma Ikram v. Waterbury Board of Education, et al., No. 3:95C02478(AHN), February 18, 1997.]

12.     One of the issues in this case is whether the defendants violated the plaintiff's right to be free from unreasonable seizure or unreasonable force. A person, even if he or she is being lawfully arrested, has a constitutional right to have that arrest made in a reasonable manner. A police officer is not allowed to behave unreasonably when making even a lawful arrest. The officer may take only such steps and use only such procedures as a reasonable and trained police officer would believe is required to take an arrested citizen into custody, for the particular charges and under the particular circumstances presented by this case. A police officer may do no more than that. In determining whether a defendant police officer has acted unreasonably in the course of making an otherwise lawful arrest, you should consider all of the facts which you find to have been proven in the case, including the need if any for undertaking the particular procedures that were involved and the relationship between those procedures and the extent of the injury which was inflicted upon the plaintiff by the officers. [Graham v. Connor, 490

U.S. 386 (1989); Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989); Finnegan v. Fountain,

915 F.2d 817 (2d Cir. 1990).]

13.     A police officer may not arrest a person without an arrest warrant unless he has

probable cause to believe that a crime has been committed and that the person in question

has committed that crime.  Probable cause exists if the facts and circumstances known to

the defendant, or of which he had reasonably trustworthy information, are sufficient to

warrant a prudent police officer in believing that the suspect has committed a crime.  The

hunch, guess, conjecture or surmise of an officer is not enough, and there must be enough

actual evidence to lead reasonably to the conclusion that the suspect has committed a

crime.  Thus, if you find that the defendant arrested the plaintiff without probable cause,

you must find the defendant liable for a violation of the plaintiff's constitutional rights.

[Dunaway v. New York, 442 US. 200 (1979);

Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959);

Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Thamel v. Town of East

Hartford, 373 F.Supp. 455 (D.Conn. 1974) (Newman, J.).]


14.     The plaintiff alleges that the defendants used unreasonable force and that, as a

result, the plaintiff was injured.  The defendants deny that any force was used against the

plaintiff, including unreasonable force under the circumstances.  The Fourth Amendment

to the Constitution of the United States guarantees to every person the right to be secured

against unreasonable seizures of their person by the police.  First, you must decide

whether the plaintiff has proven that the defendants committed the alleged act. In other

words, you must first determine whether the defendants used force against the plaintiff.

If you find that force was used, you must determine whether the acts of the defendants caused the plaintiff to suffer the loss of a federal right, that is, that you must determine whether or not the force used was unreasonable or excessive.  A police officer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose or to defend himself or another from physical injury or harm. In considering whether or not the force was unreasonable or excessive, you must determine whether the amount of force used to gain control of the scene was objectively reasonable, that is to say consistent with the force that a personal similarly situated would have employed.

In order for the plaintiff to recover under the civil rights allegations asserted in the Complaint, the plaintiff must prove that the defendant used excessive force in violation of the Fourth Amendment to the United States Constitution, and the plaintiff must prove by a preponderance of evidence: 1) Some harm that 2) resulted directly and only from the use of force that was clearly more than reasonably related to the need; and the amount of which was 3) objectively unreasonable in light of the facts and circumstances at the time.

If the plaintiff fails to prove any of these elements, you must find for the defendants. Graham v. O'Connor, 490 U.S. 386, 109SCT 1865, 104L.Ed.2d 443 (1989); 4 Modern Federal Jury Instructions - Civil, Instruction 87-74C; 3 Debitt Blackmar & Wolf, Federal Jury Practice and Instructions - Civil, Section 103.08 (1994 Pocket Part).

The unreasonableness of a force properly used must be judged objectively, from the perspective of a reasonable officer on the scene, not with all the knowledge of hindsight. Not every use of force or conduct, whatever the case may be, even it may later seem unnecessary in the relative peace of the courtroom, violates the law.  Whether unreasonable force was used depends on whether the officer's actions were "objectively

reasonable" in light of the circumstances in which they were confronted. Because the test of reasonableness is not capable of precise definition or mechanical application, however, you must pay careful attention to the facts and circumstances of this particular case. Circumstances which you should consider in determining whether the force used was objectively reasonable include whether the plaintiff was actively resisting at the time. Outside of one's home, a person is not justified in using physical force to resist an arrest by a reasonably identifiable police officer, whether such arrest is legal or illegal. You should also consider that police officers are required to make split second judgments - in circumstances that are tense, uncertain and rapidly evolving. Martine v. Gentile, 849 F.2d 863 (4th Cir. 1988); Lennon v. Miller, 66 F.3d 416, 420 (2nd Cir. 1995). 20/20 hindsight is not the appropriate lens through which to view the defendant's acts. You do not have to determine whether the defendant had less intrusive alternatives available because the defendant need only have acted within the range of conduct identified as reasonable. Only if you find from the evidence that the defendants used more force against the plaintiff than would have appeared to a reasonable police officer in the same circumstances to have been necessary in order to accomplish the lawful purpose intended; then you may find that the defendant used unreasonable force against the plaintiff contrary to the Fourth Amendment. If the plaintiff has failed to prove by a fair preponderance of the evidence that what the police officer did constituted unreasonable force, that is, more than a reasonable police officer in similar circumstances would have deemed necessary, then you must find for the defendants. Keep in mind that the Fourth Amendment to the United States Constitution protects persons from being subjected to unreasonable force while being arrested. In other words, a law enforcement official may

only employ the amount of force necessary under the circumstances to make the arrest. That raises another element in this case.  If the facts suggest to you that the force used by the defendants was not incidental to making an arrest, then the plaintiff would not be entitled to recover against the defendant under the Federal Civil Rights Act violations asserted in the Complaint.

15.    In the case of brief detentions of citizens not amounting to an arrest, the Fourth Amendment to the United States constitution requires that such a stop may not be made by an officer unless it is reasonable for him to do so under the circumstances.  As a general matter, the decision to stop and briefly detain a citizen is reasonable where the police have reasonable, articulable suspicion that a crime has occurred.  The Fourth Amendment is violated where there is neither probable cause to believe nor reasonable suspicion that a crime has occurred. [Delaware v. Prouse, 440 U.S. 648, 650 (1979); Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 1772 (1996); Diamondstone v. Macaluso, 148 F.3d 113, 123 (2d Cir. 1998).]

## DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTIONS

## 42 U.S.C. Section 1983

The plaintiff's federal claims are brought under a section of the federal law, 42

U.S.C. §1983, known as the Civil Rights Act.  This statute, which I will refer to as

"Section 1983" allows lawsuits to be brought for money damages when a person, acting

under the color of state law, deprives another person or corporation, of constitutional or

federal rights.  Specifically, Section 1983 provides that:

> Every person who, under color of any statute…of any State…subjects or
> causes to be subjected, any citizen of the United States…to the deprivation
> of any rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law.

To establish his claims under Section 1983, the plaintiff must prove the following three

elements by a preponderance of the evidence:

(1)     that the defendants acted under color of state law;

(2)     that the conduct of the defendants, or any of them, deprived him of a right

secured by the Constitution of the United States; and

(3)     that the actions of the defendants, or any of them, were the proximate

cause of the plaintiff's injuries and damages.

The first element that the plaintiff must prove is that the defendants were acting

under color of Connecticut state law.  Both sides agree that, on the day of the incident,

the defendants were acting in their capacities as members of the New Haven Police

Department and an elected official of the City of New Haven, and therefore, they were

acting under color of state law.  Since this element is not in dispute, you do not need to consider it.

So, the plaintiff must prove that the defendants, or any of them, deprived him of a constitutional right, and that the conduct of the defendants, or any of them, proximately caused his injuries and damages.  In a moment, I will explain each of these elements in greater detail, but I first want to explain that it is not necessary to find that the defendants had any specific intent to deprive the plaintiff of his constitutional rights in order for you to find for the plaintiff.  The plaintiff is entitled to relief if the defendants, or any of them, intended to perform the actions which resulted in a violation of his rights.  He is also entitled to relief if the defendants, or any of them, acted with a reckless disregard of his rights.  Reckless disregard of a plaintiff's rights means not caring whether or not those rights were being violated.  However, if the defendants acted negligently, mistakenly, or inadvertently, then they cannot be said to have violated a plaintiff's rights.  Thus, if you determine that the defendants acted negligently, mistakenly, or inadvertently, even if you find that the plaintiff was injured as a result of those actions, you must find for the defendants.

**Authority:**

> Section 1983 Litigation:  Jury Instructions, Vol. 4, Instruction 3.01.1, p. 3-3; Schwartz and Pratt.

> Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 c., pp.1065-1066; Wright and Ankerman.

> Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).

> Section 1983 Litigation: Jury Instructions, Vol. 4, Instruction 3.01.1, pp. 3-4 and 3-5; Schwartz and Pratt.

Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 f., h. and i.;
Wright and Ankerman.

Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 j. and k., pp.
1067 and 1068; Wright and Ankerman.

Brower v. County of Inyo, 489 U.S. 593, 596 (1989).

This is essentially the same instruction given by the Hon. William I. Garfinkel,
Magistrate Judge, in Schapperoew v. Consiglio, Civil Action No. 3:98cv678
(WIG).

## Proximate Cause

Now I have just explained to you the specific allegations the plaintiff is making
with respect to his federal claims under Section 1983. In order to prevail on these claims,
the plaintiff must also prove that the conduct of the defendants, or any of them, was the
proximate cause of the injuries he claims he suffered. The term "proximate cause" means
the cause or act which, as a natural consequence, produces the injury or damage, and
without which, the injury or damage would not have occurred. In other words, the
conduct of the defendants, or any of them, must have been a substantial factor in
producing the injuries of the plaintiff. This does not mean, however, that the law
recognizes only one proximate cause of an injury or damages. On the contrary, many
factors or things, or the conduct of more than one person may operate at the same time,
either independently or together, to cause injury or damage. In such a case, each may be
a proximate cause.

**Authority:**

This is essentially the same instruction given by the Hon. William I. Garfinkel,
Magistrate Judge, in Schapperoew v. Consiglio, Civil Action No. 3:98cv678
(WIG).

## **Federal Law Qualified Immunity**

I have now completed my instructions to you on the elements of plaintiff's Section 1983 claims.  If you find that the plaintiff has proved the elements of his Section 1983 claim against the defendants, or any of them, you must proceed to consider whether the defendants, or any of them, as the case may be, is entitled to what the law calls "qualified immunity" for each claim that the plaintiff has proved.  The defendants have alleged such a special defense to the plaintiff's claims.  Under qualified immunity, the issue is not the correctness of the defendant's conduct, but rather the objective reasonableness of their chosen course of action given the circumstances confronting them at the scene.

The defendants have the burden of demonstrating that their conduct did not violate clearly established federal law.  The fact that the defendants, or any of them, acted with subjective good faith does not entitle that defendant, or any of them, to the protection of qualified immunity.  A particular defendant is entitled to immunity only if a reasonable public official in defendant's position would not have been expected at the time to know that his conduct violated clearly established federal law.

In deciding what a reasonable public official should have known about the legality of his conduct, you may consider the nature of that defendant's official responsibilities, the information that was known to the defendant or not known to him at the time of the incident in question, and the events that confronted him.  Thus, you must

ask yourself what a reasonable officer or official in the particular situation of the defendants would have believed about the legality of their conduct. As I stated earlier, you should not, however, consider the defendants' subjective good faith or bad faith. If you find that a reasonable officer or official in the defendants' situation would have believed that his, or their conduct was lawful, that officer or official is protected from liability by qualified immunity.

To summarize, if the defendants, or any of them, convinces you by a preponderance of the evidence that their conduct did not violate clearly established federal law on a particular claim, then you must return a verdict for that defendant on that claim. This is so even though you may have previously found a defendant, or any of them, in fact violated the plaintiff's federally protected right. If you find that the defendants, or any of them, have not proved entitlement to qualified immunity on a particular claim, then you should proceed to consider the issue of damages on the federal law claim.

I again caution you that a constitutional violation such as that alleged by the plaintiff does not occur where the defendants' actions, even though in error, were due to negligence.

**Authority:**

Section 1983 Litigation: Jury Instructions, Vol. 4, Instruction 17.02.1, pp 17-5, 17-6 and 17-7; Schwartz and Pratt.

Lennon v. Miller, 66 F. 3d 416, 421 (2d Cir. 1995).

Harlow v. Fitzgerald, 457 U.S. 800 (1982).

## Assault

The plaintiff has also made claims based on Connecticut law that I will now discuss with you.

The plaintiff has brought a claim against the defendant police officers for an assault. An assault is sometimes termed an incomplete battery. Battery is a term that I will discuss with you shortly, and the term assault is often mistakenly used by both courts and laypersons to describe what would be more appropriately labeled a battery.

An assault is defined as any attempt with force or violence to do bodily offense to another, coupled with the present ability to complete the act. Assault does not require a touching, but merely a threat or gesture. An assault cannot be accomplished by words alone, but there must be an overt act evidencing some bodily threat.

The plaintiff, in order to prevail in this claim, must prove by a preponderance of the evidence that:

1.  the defendant police officers, or either of them, placed him in apprehension or fear; and

2.  that the defendant police officers, or either of them, had the present apparent ability to cause physical harm to the plaintiff which impinged upon the consciousness of the plaintiff.

If the plaintiff fails to prove either of these elements, then he cannot succeed on his assault claim.

**Authority:**

Wright, Fitzgerald and Ankerman, <u>Conn. Law of Torts (3rd Ed.),</u> §§6, 7 and 8.

<u>Martyn v. Donlin,</u> 151 Conn. 402 (1964)

## <u>Battery</u>

The plaintiff in this case is also claiming, under Connecticut law, to recover damages for physical injuries which he alleges were inflicted upon him by the defendant police officers; that is, the plaintiff bases his claim upon what is ordinarily spoken of as a battery. Battery may be defined as an unlawful application of force or violence to the person of another. That definition involves two elements: First, force or violence must be applied to the person of another, and as to this element it does not matter, as far as the liability of the defendant police officers, or either of them, is concerned, how little or how great that force or violence was, although, if you find that either of the defendants, or both, did commit a battery, the amount of damages you can properly determine to be due the plaintiff would vary with the extent and nature of the force applied. Second, the application of the force or violence must be unlawful. That does not necessarily mean that there was any preconceived intent on the part of the defendant police officers, or either of them, to injure the plaintiff, although a battery arising out of such an intent would be unlawful. Nor need a battery in order to be unlawful necessarily be intentional, or wanton, that is, the result of a reckless disregard of consequences on the part of the one charged with the offense. It would be sufficient if the battery was the result of negligence on the defendant police officers' part, or either of them, that is to say, of a failure on their part, or either of them, to use the care which a person of ordinary prudence would use under the circumstances present. But, to be a basis of recovery, the application of force

or violence must, by reason of the intent, the wanton conduct, or the negligence of the party charged with the offense, be unlawful.  From that it follows that if the force or violence applied to the person of the plaintiff was the result of mere accident, apart from intention, wantonness or negligence, it was not unlawful and the plaintiff cannot recover.

In summary, therefore, the plaintiff must have proved to you by a fair preponderance of the evidence that the defendant police officers, or either of them, did unlawfully apply force or violence to his person; and unless the plaintiff has so proved, you need go no further in your consideration of this claim.

**Authority:**

Connecticut Jury Instructions (Civil), Fourth Edition, Section 400 a. – c., pp. 636-37.

Martyn v. Donlin, 151 Conn. 402 (1964).


**Intentional Infliction of Emotional Distress**

The final state-law claim brought by the plaintiff against the defendants is for what is known as "intentional infliction of emotional distress."  To prevail on this claim, the plaintiff must prove by a preponderance of the evidence:

(1)    that the defendants, or any of them, intended to inflict emotional distress or that they knew or should have known that emotional distress was a likely result of their conduct;

(2)    that the conduct of the defendants, or any of them, was extreme and outrageous;

(3)    that the conduct of the defendants, or any of them, was the cause of the plaintiff's distress; and

(4)    that the emotional distress sustained by the plaintiff was severe.

While analyzing the evidence that has been presented with respect to this claim,

you must be ever mindful that liability for intentional infliction of emotional distress requires that you find that the conduct of the defendants, or any of them, exceeded all bounds usually tolerated by decent society, of a nature which was especially calculated to cause, and did cause, mental distress of a very serious kind. Thus, it is the intent to cause injury that is the material or significant element of this cause of action. Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice to support a claim for intentional infliction of emotional distress. You, the jury, must draw a line between the slight hurts that are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. Therefore, you can only find for the plaintiff on this count against the defendants, or any of them, if you find by a preponderance of the evidence that the conduct of the defendants, or any of them, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, such that it would be regarded as atrocious, and utterly intolerable in a civilized community.

**Authority:**

Peytan v. Ellis, 200 Conn. 243, 253 (1986)

DeLaurentis v. New Haven, 220 Conn. 225, 267 (1991)

Brown v. Ellis, 40 Con. Sup. 165, 166 (1984)

Whelan v. Whelan, 41 Conn. Sup. 519, 522-23 (1991)

This is essentially the same instruction given by the Hon. William I. Garfinkel, Magistrate Judge, in Schapperoew v. Consiglio, Civil Action No. 3:98cv678 (WIG).


**State Law Qualified Immunity**

As to the plaintiff's state law claims, the defendants, as employees of the City of New Haven at the time of plaintiff's alleged injury, have qualified immunity with respect to the performance of a governmental duty, but they may be liable if they misperformed a ministerial act, as opposed to a discretionary act, or acted in a willful or wanton manner. A ministerial act refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. The hallmark of a discretionary act is that it requires the exercise of judgment.

If you find that the defendants, or any of them, negligently performed a ministerial act, or if their actions were willful or wanton, then governmental immunity with respect to plaintiff's state law claims would not be appropriate. On the other hand, if you find that the acts or omissions which the plaintiff attributes to the defendants, or any of them, involved the use of discretion or judgment, then these defendants would have state law qualified immunity, and you would have to return a verdict in their favor on plaintiff's state law claims.

**Authority:**

Evons v. Andrews, 211 Conn. 501, 505 (1989)

Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167 (1988)

Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 628 (2000)

Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 167-68 (1988)

## Damages

If you find that the defendants, or any of them, are liable to the plaintiff based on the federal Section 1983 claims or on one or more of the state-law claims, then you shall consider the issue of damages.  The fact that I give you instructions on damages should not be taken as an indication that I think damages should be, or should not be, awarded. This is a determination that is left entirely to you, the jury.  I am instructing you on the principles governing damage awards so that, in the event you should find any defendant liable, you will know on what basis to consider any award of damages.

You may only award damages as are justified by the pleadings and the proof. That is, the plaintiff must prove to you by a preponderance of the evidence the nature and extent of his damages.  And, you shall award damages only for those injuries which you find that the plaintiff has proven were the direct result of the defendants' conduct.

There are two kinds of damages that you may consider – compensatory and punitive damages.

### A.     Compensatory Damages

Compensatory damages represent a sum of money that will fairly, adequately, and reasonably compensate a person for harm proximately caused by another's conduct. With respect to the plaintiff, compensatory damages may be awarded for any physical

injury and emotional harm that he suffered during and after the events at issue in this

case, including: money actually spent or debts incurred as a result of the injury; lost

earnings; pain and suffering, emotional distress, humiliation, injury to one's reputation,

embarrassment, fear, anxiety and/or anguish that you find the plaintiff has suffered or

that you find the plaintiff will, with reasonably certainty, suffer in the future.

It is for you, in the exercise of your best judgment, to say what is fair and just

compensation to the plaintiff insofar as money will compensate him for the damages that

he has sustained.  Determining damages in a case of this sort involves a certain degree of

estimation.  Often, certain types of damages cannot be proven with mathematical

certainty.  You have to apply sound judgment and common sense in reaching he proper

amount of damages.  However, there must be evidence to establish damages with at least

a reasonable degree of certainty.  You are not to guess or speculate what the damages

were.  You must use you best judgment, remembering always that it is incumbent upon

the plaintiff to prove, by a fair preponderance of the evidence, the amount of damages to

which he is entitled.

### B.    Avoiding Duplicative Damages

Because this case involves multiple claims under federal and state law, I would

caution you that the plaintiff may be compensated only once for an injury.  You should

not award compensatory damages more than once for the same injury, even though the

injury may have been caused by a violation of different rights.  In other words, for

example, if you find that plaintiff's federal and state claims for excessive force both

provide theories for compensating one distinct injury, Mr. Dalby is only entitled to

recover once for that injury.  For example, if a plaintiff were to prevail on both of his

claims and establish that he suffered a $50 injury, you could not award him $50 in compensatory damages per claim – for a total of $100.  Rather, you would only award him a $50 total.  With respect to compensatory damages, the plaintiff is only entitled to be made whole again, not recover more than he has lost.  Of course, if the plaintiff proves liability on more than one claim and different injuries are attributed to different claims, then you must compensate him fully for all of his injuries.

### C.     Nominal Damages

If you find that the defendants, or any of them, violated the plaintiff's constitutional rights, but you do not find that he suffered actual injury or loss by virtue of his constitutional rights having been violated by the defendants, or any of them, then the plaintiff is entitled to nominal damages for that loss.  Nominal damages, however, are generally set in the amount of $1.00.

The mere fact that a constitutional deprivation has occurred is an injury even when no actual damages flow from that deprivation.  Therefore, if you find that the plaintiff has suffered no damages as a result of the conduct of the defendants, or any of them, other than the fact of a constitutional deprivation, then you must award nominal damages in the amount of $1.00.

### D.     Punitive Damages

I advised you earlier that there are two kinds of damages.  The second is known as punitive damages.  Punitive damages are available to the plaintiff for both his federal and state claims.  If you find that the defendants, or any of them, are liable on the plaintiff's federal Section 1983 claim, you will be asked whether punitive damages are warranted.  On the plaintiff's state-law claims, you also will be asked whether or not to

award punitive damages.  If you find that punitive damages should be awarded against the defendants, or any of them, the amount will be determined in a separate proceeding.

**Punitive Damages – Federal Civil Rights Violations**

Before you can award punitive damages, you must first have decided to award the plaintiff compensatory or nominal damages for the plaintiff's federal civil rights claims. The law permits the jury, under certain circumstances, to award punitive damages in order to punish a wrongdoer for some exceptional misconduct as I will delineate in a moment, and to serve as an example or warning to others not to engage in wrongful conduct.  In deciding whether to award punitive damages, you should consider whether you find that the defendants, or any of them, engaged in any of he following conduct:

1. Willful or malicious violation of the plaintiff's constitutional rights;

2. An intentional act by the defendants in gross disregard of the plaintiff's rights; or

3. Reckless disregard by the defendant of whether he was violating the plaintiff's rights.

**Punitive Damages – State Law**

If you have decided to award the plaintiff compensatory damages for the plaintiff's state claims of assault, battery or intentional infliction of emotional distress, you may also consider awarding punitive damages for the state law claim.  The standard for awarding punitive damages under state law is distinct from the standard for awarding punitive damages under federal law.

In deciding whether to award punitive damages, you should consider whether you find by a preponderance of the evidence that the defendants, or any of them, acted maliciously or with reckless indifference to plaintiff's rights or interests. An act is done maliciously if it is prompted by a bad motive, such as ill will or spite toward the plaintiff. An act is done with reckless indifference if the defendants, or any of them, knew or should have known that the plaintiff's rights or interests would be harmed by its acts. Your decision should be based on whether you find that the defendants acted willfully, deliberately, maliciously, or with reckless disregard of the plaintiff's interests. Because punitive damages are an exceptional award, granted only in cases of extreme or outrageous misconduct, any such damages should be awarded only with calm discretion and sound reason.

Whether or not to make any award of punitive damages is a matter exclusively within the province of the jury. However, you must bear in mind that punitive damages are only allowed if you have first found that the plaintiff is entitled to compensatory or nominal damages. You must also bear in mind that the law requires that punitive damages, if awarded, must be awarded with calm discretion and sound reason. They must never be awarded because of bias, sympathy, or prejudice with respect to any party to the case.

If you decide that the plaintiff is entitled to punitive damages on any of his state-law claims, the court will determine the amount of damages in a separate proceeding. So, on the verdict sheet that you will be given, you will only be asked whether or not to award punitive damages on these claims.

**Authority:**

This is essentially the same instruction given by the Hon. William K. Garfinkel, Magistrate Judge, in <u>Schapperoew v. Consiglio</u>, Civil Action No. 3:98cv678 (WIG).


## CERTIFICATE OF SERVICE

I, Rodger W. Lehr, Jr., hereby certify that I have served the foregoing by causing a copy to be MAILED, POSTAGE PREPAID, to all counsel and pro se parties of record on April 20, 2005:

John R. Williams
51 Elm Street, 4th Floor
New Haven, CT 06510

Rene Gerard Martineau
Del Sole & Del Sole, L.L.P.
46 South Whittlesey Avenue
Wallingford, CT 06492


/s/_____
Rodger W. Lehr, Jr.