**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**RAUL AVILA**

**VS.**                                    **NO.:3:02CV00851(WWE)**

**ROBIN KROOGMAN, ET AL.**               **JANUARY 23, 2006**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.     INTRODUCTION

Plaintiff's complaint alleges violation of his federal constitutional rights and the Connecticut common law.  His federal claims, brought pursuant to 42 U.S.C. §1983, allege that his First Amendment right to freedom of speech, his Fourth Amendment rights to be free from unlawful seizure, false arrest and unreasonable force, and his Fourteenth Amendment rights to substantive due process of law were all violated.  Plaintiff also makes pendent state law claims of assault and battery and intentional infliction of emotional distress.

Defendants have denied the material allegations and claims contained in plaintiff's complaint.  With respect to the federal claims they have asserted the affirmative defenses of qualified immunity, absolute legislative immunity for defendant Kroogman, and failure to state a claim upon which relief can be granted.  Defendants, as to the state law claims, have asserted the affirmative defenses of qualified immunity, comparative negligence and failure to state a claim upon which relief can be granted.    Defendant is now moving for summary judgment in this matter.

1

It should be noted that defendant Robin Kroogman is now deceased and that her estate has been substituted as a party defendant. However, for the sake of clarity, this party will be referred to in this memorandum of law as defendant Robin Kroogman.

## II.    **DEFENDANTS' STATEMENT OF FACTS**

This case, at its root, involves a verbal disagreement between plaintiff Raul Avila and defendant Robin Kroogman that occurred on May 9, 2002 in the Aldermanic Chambers at New Haven's City Hall during a public meeting of the Community Development Committee. This committee was a standing committee of the New Haven Board of Alderman. Defendant Kroogman, a New Haven Alderwoman, was the Chairperson of the committee, and plaintiff Avila, although not a member of the committee, was present in his capacity as a member of the City of New Haven Board of Aldermen. Defendant Kroogman and plaintiff Avila were seated, along with other Board of Aldermen members, at a table in the front of the Aldermanic Chambers. Interested members of the public were also present and were invited to express their views concerning the issues being discussed.

Early in the hearing, the plaintiff asked a member of the public a question in Spanish and response provided by this individual was also in Spanish. Defendant Kroogman requested that the plaintiff translate the question and answer so that all present could understand what was being said. The plaintiff refused, and a verbal argument then ensued between defendant Kroogman and the plaintiff regarding this refusal to translate.

Defendant Kroogman then requested that defendant Joseph Witkowski and defendant Michael Illingworth, both members of the New Haven Department of Police Service, who were in uniform and standing in the back of the room, to come forward and

remove the plaintiff.  Defendant Witkowski approached the plaintiff and twice asked him to

leave, but received no response as the plaintiff was still involved in a verbal dispute with

defendant Kroogman.  Defendant Witkowski, in order to get the attention of the plaintiff,

touched him on one of his shoulders, and when the plaintiff, who was still seated, turned

around, defendant Witkowski again asked him to leave.  Defendant Kroogman at this

juncture recessed the hearing and a short break was taken.

Defendant Kroogman and the plaintiff left the Aldermanic Chambers, and when they

returned, they had apparently worked out their differences on the translation issue.  A

constituent of defendant Kroogman agreed to translate, and the public meeting resumed

and eventually concluded.  The plaintiff, during the remainder of the meeting, was actively

involved in the matters under consideration.

Plaintiff Raul Avila was never arrested, seized, restrained or detained by the

defendant police officers, and he was never subjected to any unreasonable force.  The only

contact between him and the defendant police officers involved defendant Witkowski

touching him on his shoulder in order to get his attention.  Plaintiff was not removed from

the public meeting, and if fact, after the recess, continued to participate in the discussions

that were taking place at the meeting.

III.   **LAW AND ARGUMENT**

**A.**

**Summary Judgment Standard**

Defendants, having filed this motion for summary judgment, have the burden of

establishing that there are no genuine issues of material fact in dispute and that they are

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106, S. Ct. 2505 (1986).  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact."  Miner v. City of Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  If the defendants satisfy their initial burden, then the burden shifts to the plaintiff to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists.  Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).  The plaintiff must do more than present evidence that is merely colorable, conclusory, or speculative, and must present "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson v. Liberty Lobby, Inc., supra, 256; see also Aldrich v. Randolph Cent. Sch. Distr., 963 F.2d 520; 523 (2d Cir. 1992).  He also must do more than show "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the Court will resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich v. Randolph Cent. Sch. Dist., supra, 523. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Finally, "where . . . the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case."  Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 279 (2d Cir. 1999).

**B.**

**Plaintiff's First Amendment Claim**

Plaintiff Raul Avila, in order to prevail on his First Amendment claim asserted under 42 U.S.C. Section 1983, "must prove by a preponderance of the evidence that (1) the expression at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected expression, and (3) a casual relationship existed between the constitutionally protected expression and the retaliatory action." Camacho v. Brandon, 317 F.3d 153, 160 (2d Cir. 2003). Simply put, plaintiff must show that his conduct is deserving of First Amendment protection and that the conduct of the defendants was motivated or substantially caused by his exercise of free speech. Hankard v. Town of Avon, 126 F.3d 418, 421-422 ( 2d Cir. 1997). What lies at the heart of protected speech is speech that concerns public issues and political matters. Piscottano v. Town of Somers, 396 F. Supp. 2d 187, 200 (D.Conn. 2005). "'The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact.'" Id., quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

"The Supreme Court has articulated a three-step, forum-based test for determining whether a state actor violated a plaintiff's First Amendment right to free speech, under which a court must determine: (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard." Piscottano v. Town of Somers, supra, 200, citing Cornelius v. NAACP Legal Defense & Educational Fund, 473 U.S. 788, 797, 105 S.Ct. 3439 (1985). While the

events that transpired in the instant case took place in a public forum in which public issues and political matters were being discussed, the conduct of the plaintiff that prompted the reaction from defendant Kroogman had nothing whatsoever to do with his exercise of free speech, and such conduct, as a matter of law, cannot be found to enjoy protected status under the First Amendment.  It was plaintiff's  refusal to translate, which he had been requested to do by defendant Kroogman so that all who were present at this public meeting would be able to know what was being said, that sparked the dispute between he and this defendant, and which led to the involvement of  defendants Witkowski and Illingworth. Plaintiff's speech was in no way restricted.  Contrary to such a claim, when the public meeting resumed, plaintiff participated in discussions that were  taking place, asking questions and venturing opinions.

**C.**

### Plaintiff's Fourth Amendment Claim of Unlawful Arrest and/or Seizure

Plaintiff Raul Avila in order to prevail on his Section 1983 false arrest claim must establish that (1) he was intentionally arrested by a defendant or that a defendant had him arrested; (2) that he was aware of the arrest; (3) that he did not consent to the  arrest; and (4) the arrest was not supported by probable cause.  (Citations omitted.) <u>Shattuck v. Town of Stratford</u>, 233 F.Supp.2d 301, 306 (D.Conn. 2002).  The plaintiff, to set forth such a claim, must show that he was intentionally confined without his consent and without justification.  (Citations omitted.) <u>Bontatibus v. Ayr</u>, 386 F.Supp.2d 28, 32 (D.Conn. 2005). A "seizure or arrest is a necessary element for a Fourth Amendment claim of false arrest." (Citation omitted.) <u>Skalaban v. Department of Children and Families</u>, 314 F.Supp.2d 101,

108 (D.Conn. 2004). "It is, after all, the seizure or arrest component of these causes of action that implicates the Fourth Amendment." (Citation omitted.) Id.

A seizure sufficient to implicate the limitations of the Fourth Amendment is not synonymous with an actual arrest, and could come about where an officer even briefly detains an individual and retrains that individual's right to walk away. (Citations omitted.) Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991). However, "[t]he police can be said to have seized an individual 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Id.; quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980). Not every encounter between a citizen and a police officer is a seizure. Posr v. Doherty, supra, page 97.

Defendant police officers Joseph Witkowski and Michael Illingworth were requested by defendant Robin Kroogman to remove the plaintiff from the meeting because of the verbal argument between them over plaintiff's refusal to translate. It is obvious from the transcript of the meeting that the dispute regarding translation was beginning to cause a disruption of the meeting. (See Transcription of the Community Development Committee, May 9, 2002, pages 7, 8 and 9.) The plaintiff was only asked by the police to leave the meeting. The defendant police officers did not arrest the plaintiff, did not seize the plaintiff, did not detain the plaintiff and did not restrain him in any way. As soon as defendant Kroogman recessed the meeting, the plaintiff left the Aldermanic Chamber with her, and when he returned with her, he continued his participation in the meeting. These actions of the plaintiff would belie any suggestion that he had been taken into custody, seized, detained or restrained.

**D.**

**Plaintiff's Fourth Amendment Claim of Excessive Force**

"To establish a Fourth Amendment excessive-force claim, a plaintiff must show that the force used by the officer was, in the light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standard." <u>Finnegan v. Fountain</u>, 915 F.2d 817, 823 (2d Cir. 1990). What the Fourth Amendment requires is an exclusively objective analysis of the reasonableness of an officer's actions in light of the totality of the circumstances surrounding the incident. (Citations omitted.) <u>Thompson v. City of Meriden</u>, 1999 WL 301693, *11 (D.Conn.) (Burns, Senior J., April 14, 1999). "The reasonableness inquiry must be undertaken without regard to the underlying motives or intent of the police officers." (Citations omitted.) Id. "In determining whether reasonable force was used, courts must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the opposing governmental interests at stake." (Citations omitted.) Id.

The only physical contact that took place between the defendant police officers and plaintiff Raul Avila was when Sergeant Witkowski touched his shoulder to get his attention during his, Avila's, verbal dispute with defendant Kroogman. Prior to this touching, defendant Witkowski, who was standing behind the plaintiff who was seated, had asked him on two occasions to leave the meeting without receiving any acknowledgment or indication that he had heard what this defendant was saying to him. Again, it must be remembered that plaintiff Avila was involved with defendant Kroogman in an ongoing verbal dispute at this time. Defendant Witkowski merely touched the plaintiff on his shoulder to

get his attention after his words failed to do so.   Considering the "totality of the circumstances surrounding this incident," it cannot be said that defendant Witkowski's action in touching the plaintiff's shoulder was "objectively unreasonable."

**E.**

## Plaintiff's Substantive Due Process Claim

"Historically, [the] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."   (Emphasis in original.)   <u>Daniels v. Williams</u>, 474 U.S. 327, 331, 106 S.Ct. 662 (1986).   "Alleged abuses of the police power are sufficiently arbitrary to rise to constitutional magnitude only when the conduct at issue shocks the conscience."   (Internal quotation marks omitted.)   <u>Medeiros v. O'Connell</u>, 150 F.3d 164, 170 (2d Cir. 1998).   The Supreme Court has "always been reluctant to expand the concept of substantive due process."   <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125, 112 S.Ct. 1061 (1992).   Utmost care should be exercised whenever a court is asked to break new ground in this field.   <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720, 117 S.Ct. 2258 (1997).

In the instant matter it is difficult to discern what substantive due process rights the plaintiff is claiming  to having been violated.   There was no deprivation of life, liberty or property.   He was never arrested, seized, detained, restrained or taken into custody by the defendant police officers.   He continued to participate in public meeting of the Community Development Committee of the New Haven Board of Alderman after its resumption subsequent to the recess taken by defendant Kroogman.   There was certainly nothing that occurred during the evening of May 9, 2002 in the Aldermanic Chamber of the City of New

9

Haven that "shocks the conscience."  What did occur was the proverbial "tempest in a teapot" between plaintiff Avila and defendant Kroogman that they quickly resolved between themselves.

**F.**

**Defendants are Entitled to Qualified Immunity**

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police [or other] conduct." Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2158 (2001).  "It is sometimes difficult for an officer [or other state actor] to determine how the relevant legal doctrine, . . ., will apply to the factual situation the officer confronts." Id.  "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id. The United States Supreme Court has held that the defense of qualified immunity protects government officials performing discretionary duties from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ham v. Greene, 248 Conn. 508, 520 (1999); quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

The first inquiry with respect to qualified immunity is whether the plaintiff has alleged a violation of a constitutional right and second, whether that right was "clearly established" at the time of the alleged violation. Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292 (1999).  The defense of qualified immunity will protect a government officer "if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Menon v. Frinton, 170 F. Supp. 2d 190, 194 (D.Conn. 201), citing Lennon

10

v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).  Whether the defendants are entitled to qualified immunity is a question of law for the court to decide.  Finnegan v. Fountain, 915 F.2d 817, 821 (2d Cir.1990).

Assuming arguendo that a constitutional violation did occur, that facts of this case which have been previously set forth show that it was objectively reasonable for the defendants to believe that their actions were lawful at the time of the challenged act.  Considering the totality of the situation that confronted defendant Robin Kroogman and the defendant police officers, Sergeant Witkowski and Officer Illingworth, persons of reasonable competence, in like circumstances, could disagree as to whether there actions were reasonable. Therefore, the defendants are protected from liability by qualified immunity.

## G.

### Defendant Kroogman is Entitled to Absolute Legislative Immunity

Defendant Robin Kroogman at the time of the May 9, 2002 incident was a member of the Board of Aldermen of the City of New haven and was the Chairperson of, and presiding over a public meeting of its Community Development Committee.  Local legislators are absolutely immune from suit for actions brought under 42 U.S.C. Section 1983 for their legislative activities.  Bogan v. Scott-Harris, 523 U.S. 44, 49, 54, 118 S.Ct. 966 (1998).  "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"  (Citation omitted.)  Id., at page 54.  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.  The privilege of absolute immunity 'would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a

conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.'" (Citation omitted.) Id. Actions are legislative where they are integral steps in the legislative process. Id., at page 55. "Investigations, whether by standing or special committees, are an established part of representative government." Tenny v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783 (1951).

Defendant Kroogman was presiding over a public meeting of a committee of the New Haven Board of Aldermen where matters of public concern were being discussed and debated. The opinions being sought were an integral part of the legislative process as this committee investigated the issues being raised at this meeting. As stated previously in this memorandum, the dispute between the plaintiff and defendant Kroogman over the translation request was beginning to disrupt the meeting. The actions taken by defendant Kroogman with respect to the plaintiff were an attempt by her to get legislative meeting back on track.

**H.**

### The Court Should Refuse to Exercise Supplemental Jurisdiction Over the Plaintiff's State Law Claims of Assault and Battery and Intentional Infliction of Emotional Distress

If the court disposes of the federal law claims of the plaintiff against the defendants, then it should refuse to exercise supplemental jurisdiction over any state law claims made against said defendant. As case after case in this Circuit (and throughout the country) holds, a district court should refuse to exercise supplemental jurisdiction over a state tort once the claim that establishes the basis for federal court jurisdiction is withdrawn or disposed of. See, e.g., Daniels v. Townsley, 161 F. Supp. 2d 63, 72 (D. Conn. 2001)

(holding that once plaintiff's §1983 claims were dismissed, state law claims for negligent and/or intentional assault and battery should be dismissed under 28 U.S.C. §1367(c); <u>A. Aiudi & Sons v. Town of Plainville</u>, 862 F. Supp. 737, 745 (D. Conn. 1994) (when "the basis upon which subject-matter jurisdiction rests has been obliterated" by dismissal of §1983 claims, remaining state law claims should be dismissed) (J. Nevas/J. Smith).  See also <u>El-Bey v. City of New York</u>, 151 F. Supp. 2d 285, 302 (S.D.N.Y. 2001) (finding the once various federal civil rights claims were dismissed, "prudence demands that the Court decline to invoke its supplemental jurisdiction over plaintiff's state law claims"); <u>Wenner v. C.G. Brettins Mfg. Co.</u>, <i>Inc.</i>, 917 F. Supp. 640, 649-50 (W.D. Wis. 1995) ("When federal claims are dismissed before trial . . . the decision to exercise supplemental jurisdiction over state law claims is a matter of discretion. . . .  However, in all but the rarest instance, the court is to decline to do so.").  In this case, there is no compelling reason to depart from the general rule of dismissing state law claims once the federal claims underlying the basis for federal jurisdiction are disposed of or dismissed; therefore, if the court were to dismiss the federal claims, it should dismiss the common law claims of assault and battery and of intentional infliction of emotional distress as well.

**I.**

### Alternatively, the Plaintiff's State Law Claims of Assault and Battery and Intentional Infliction of Emotional Distress Fail as a Matter of Law.

### 1.    Assault and Battery

An actionable assault and battery claim under Connecticut law may be committed intentionally, wantonly, or negligently.  <u>Markey v. Santangelo</u>, 195 Conn. 76, 78 (1985);

Jonelis v. Russo, 863 F.Supp. 84, 88 (D.Conn. 1994). "'An assault has been defined as any attempt with force or violence to do corporal offense to another, coupled with the present apparent ability to complete the act.' D. Wright, J. Fitzgerald and W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) 6, 8. 'A battery is a completed assault. Battery has been defined as any touching of the person of another in rudeness or anger.' Id., 9, 10." Singer v. Stammel, 1997 WL 306736*6 (Conn. Super.) (Grogins, J., May 28, 1997); see also Boanno v. Paplin, 2001 WL 103876 *2 (Conn. Super.) (Mancini, J., January 26, 2001).

Defendant Witkowski's contact with the plaintiff was not rude and was done in anger. The sole purpose of his touching the plaintiff on the shoulder was to get his attention. This de mininis contact was not conduct that went beyond what most members of society would deem as reasonable under the circumstances then existing.

**2.     Intentional Infliction of Emotional Distress**

In order to succeed on a claim of intentional infliction of emotional distress, the plaintiff must establish that: (1) the defendants intended to inflict emotional distress or that they knew or should have known that the emotional distress was a likely result of their conduct; (2) that the defendants conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress; and (4) that the plaintiff's distress was severe. Appleton v. Stonington Board of Education, 254 Conn. 205, 210 (2000); Smith v. City of New Haven, 166 F.Supp.2d 636, 645 (D.Conn. 2001). The plaintiff must allege facts to support each of these claims. Smith v. City of New Haven, supra, 645.

The question of whether the defendants' conduct amounted to "outrageous or extreme" is a question for the court; only where a reasonable juror could find differently does it become a question for the jury.  Reed v. Signode Corp., 652 F.Supp. 129, 137 (D.Conn.1986); Mellaly v. Eastman Kodak, 42 Conn. Supp. 17, 18 (1991).  " Liability has been found only where the conduct had been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."  Appleton v.Stontington Board of Education, supra,  211, quoting W. Prosser & W. Keeton, Torts (5th Ed.1984)§12 p. 60.  See Finnucane v. Dandio, 1997 WL 306739*3-4 (Conn. Super 1997) (holding that a police officers call to the plaintiff's wife threatening to arrest her husband if he appeared at a certain location was not sufficiently outrageous).

Concerning the requirement that the plaintiff's distress be severe, the plaintiff must demonstrate that the plaintiff actually sustained severe emotional distress of a very serious kind. Anacona v. Manafort Bros., Inc, 746 A.2d 184, 192 (Conn. App. 2000); see Drew v. K-Mart, 37 Conn. App. 239 (1995) (evidence that plaintiff suffered great humiliation is insufficient to support a claim for intention infliction of emotional distress); See also MacDonald v. Howard, 2000 WL 1687119 (Conn. Super) ("merely alleging extreme distress unsupported by factual allegations is legally insufficient.")

The facts of this case have been previously related in this memorandum in great detail.  The actions of the defendants can hardly be said to be "so outrageous and extreme as to go beyond all possible bounds of decency."  Additionally, the plaintiff has failed to provide any evidence that as a result of these actions by the defendants, he sustained any

serious emotional trauma as a result.  Because the actions of the defendants were not outrageous, were neither intended nor likely to cause emotional distress and did not, in fact, cause any severe emotional trauma, no reasonable fact finder could find that the defendants intentionally inflicted emotional distress on the plaintiff

## IV.    <u>CONCLUSION</u>

For the reasons above stated, the court should grant the defendants' motion for summary judgment because there are no genuine issues of material fact to be determined by a fact finder.

THE DEFENDANTS


/s/_____
            Michael A. Wolak, III
            Assistant Corporation Counsel
            Fed. Bar #ct12681
            City of New Haven
            165 Church Street
            New Haven, CT  06510
            Telephone:  (203) 946-7970
            Facsimile:  (203) 946-7942
            Mwolak@newhavenct.net
            Their Attorney

## CERTIFICATION

This is to certify that a copy of the foregoing was either faxed, hand delivered and/or mailed, postage prepaid, on the January 23, 2006 to the following counsel of record:

Norman A. Pattis, Esq.
Law Offices of Norman A. Pattis, LLC
649 Amity Road
P.O. Box 280
Bethany, CT  06524

/s/_____
                    Michael A. Wolak, III

J:\CYCOM32\WPDOCS\D023\P003\00015851.DOC